IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


WILLIAM S. DAVIS, JR.,           )
                Plaintiff,   )
                        )
     vs.                  )     Civil Action No. 14-1416
                        )     Judge Mark R. Hornak/
LYLE GRABER *individually and in his*   )     Chief Magistrate Judge Maureen P. Kelly
*capacity as a Police Detective for the*   )
*Investigations Unit for the Allegheny*   )
*County District Attorney*, ALLEGHENY   )
COUNTY, PENNSYLVANIA;        )
ALLEGHENY COUNTY OFFICE OF    )
THE DISTRICT ATTORNEY *and*      )     Re: ECF No. 18
STEPHEN A. ZAPPALA, JR.         )
*individually and in his official capacity*   )
*as the District Attorney of Allegheny*   )
*County, Pennsylvania,*          )
              Defendants.  )


## REPORT AND RECOMMENDATION


## I.    RECOMMENDATION

Before the Court is "Defendants' Motion to Dismiss Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim and to Dismiss Counts IV and V pursuant to Federal Rule of Civil Procedure 12(b)(1) for Lack of Subject Matter Jurisdiction."[1] ECF No. 18. For the reasons that follow, it is respectfully recommended that the Motion to Dismiss be granted in part and denied in part.

---

[1] In the title of the instant Motion to Dismiss, Defendants identify "Counts IV and V" as the counts that they seek to dismiss for lack of subject matter jurisdiction. ECF No. 18 at 1. It does not appear that these references are correct as Count V is a federal claim and Defendants' Motion in this respect is based on this Court declining to exercise supplemental jurisdiction over state claims. In any event, this Court need not address this argument because it is the recommendation that certain federal claims survive the instant Motion to Dismiss.

## II.     REPORT

### A.     FACTUAL AND PROCEDURAL BACKGROUND

#### 1.     Facts Alleged in the Amended Complaint

Plaintiff William S. Davis, Jr. ("Plaintiff") filed the operative Amended Complaint on April 8, 2015.  ECF No. 13.  Therein, he alleges facts concerning two cases that arose during his employment as a police officer for the Whitaker Borough Police Department.  Plaintiff's involvement in these cases was the basis for criminal charges brought against him.  The initiation and prosecution of those criminal charges are the bases for this lawsuit.  Relevant allegations concerning the underlying cases follow.

#### a.     The Stillwell Case

On June 27, 2012, Plaintiff was working in an unmarked police cruiser, parked along Route 837 and monitoring traffic for suspected vehicles transporting illegal drugs through the area.  Id. ¶¶ 20-22.  At approximately 9:08 p.m., Plaintiff observed a white BMW sedan like one that he was expecting.  Id. ¶ 23.  The vehicle had dark tinted windows and its driver failed to signal before making a turn onto Route 837.  Id.  Having observed the driver commit multiple violations of the Pennsylvania Vehicle Code, Plaintiff initiated a stop of the vehicle using of police lights and sirens.  Id. ¶¶ 24-28.  The vehicle stopped along the side of Route 837.  Id. ¶ 29. After requesting assistance from a marked police vehicle, Plaintiff approached the vehicle with his police badge displayed on a chain around his neck.  Id. ¶¶ 30-31.  The vehicle pulled away and "sped away down Route 837."  Id. ¶¶ 32, 34.  Plaintiff pursued the vehicle using lights and sirens; during the pursuit both Plaintiff and the suspected vehicle traveled at speeds exceeding the posted limit.  Id. ¶¶ 35-36.  Due to traffic at Kennywood Park, the suspected vehicle was forced to stop there.  Id. ¶¶ 37-38.  After reporting his position via radio, Plaintiff approached the

suspected vehicle with his firearm drawn and instructed the driver to roll down the window.  Id.

¶¶ 39, 41.  When the driver did not immediately comply with this directive, Plaintiff instructed

the driver to unlock the door and exit the vehicle.  Id. ¶¶ 42-43.  The driver did not immediately

comply with Plaintiff's directive.  Id. ¶ 44.  Instead, Plaintiff observed the driver lean towards the

center of the vehicle.  Id.  Plaintiff then used the handle of his firearm to break the driver's side

window of the vehicle.  Id. ¶ 45.  Plaintiff ordered the driver, later identified as Danielle

Stillwell, out of the vehicle.  Id. ¶¶ 46-47.  Ms. Stillwell complied and she was placed in

handcuffs.  Id. ¶ 48.  Three marked police units soon arrived on the scene.  Id. ¶¶ 49-50.  Plaintiff

subsequently learned that Ms. Stillwell had called 911 after fleeing the original stop, expressing

concern that Plaintiff was not a real police officer due to his plain clothes and unmarked vehicle.

Id. ¶ 51.

At the Whitaker Borough Police Station, Ms. Stillwell asked Plaintiff if there was a way

to resolve the matter without criminal charges being filed against her.  Id. ¶ 64.  Plaintiff

contacted his supervisor, Chief Vargo of the Whitaker Borough Police Department, and

requested permission from him to give Ms. Stillwell the option of accepting responsibility for the

incident and paying restitution for the damage to Plaintiff's firearm in lieu of criminal charges

being filed against her.  Id. ¶¶ 66-67.  After obtaining approval from Chief Vargo for his

proposal, Plaintiff made the offer to Ms. Stillwell.  Id. ¶¶ 68-69.  Plaintiff indicated to Ms.

Stillwell that if she did not accept the offer, he would charge her for Vehicle Code violations,

including fleeing and eluding a police officer.  Id. ¶¶ 57, 60, 70.  Ms. Stillwell accepted the offer

and inquired about a nearby ATM machine so she could obtain funds to make the restitution

payment.  Id. ¶¶ 73, 75.  Plaintiff informed her that he would get an estimate on the necessary

repair to his firearm and would contact her once he had the information.  Id. ¶ 76.  Ms. Stillwell was then released from custody.  Id. ¶ 77.

Plaintiff subsequently attempted to contact Ms. Stillwell about the restitution.  Id. ¶ 78-79.  On July 2, 2012, Ms. Stillwell sent a text message to Plaintiff informing him, "I have spoken with the district attorney's office and they instructed me not to communicate with you.  Please do not contact me regarding this matter."  Id. ¶ 81.  Plaintiff responded, "No problem.  I'll file the charges."  Id. ¶ 82.  The following day, Plaintiff filed a criminal complaint against Ms. Stillwell for multiple Vehicle Code violations.  Id. ¶ 83.

On October 19, 2012, Defendant Lyle Graber ("Graber"), a police detective for the Investigations Unit of the Allegheny County District Attorney, filed a Criminal Complaint and Affidavit of Probable Cause against Plaintiff for charges arising from the events described above relative to Plaintiff's conduct as to Ms. Stillwell.  Id. ¶¶ 1, 90.  Plaintiff was later acquitted of those charges following a jury trial.  Id. ¶ 154.

### b.    The Lang Case

In the spring of 2012, Plaintiff began conducting an investigation into suspected illegal drug activity at 122 and 244 Frank Street in Whitaker Borough.  Id. ¶¶ 95, 97.  Plaintiff conducted this investigation, in part, through his participation in the Allegheny County District Attorney's Narcotics Enforcement Team ("DANET").  Id. ¶¶ 17, 96.  On April 30, 2012, Plaintiff conducted surveillance of 122 Frank Street, where he observed "substantial foot traffic entering and leaving the residence, with many of the individuals entering the residence staying for a short period of time, some less than five (5) minutes."  Id. ¶¶ 99-100.

On May 7, 2012, Plaintiff performed a "trash pull" at 122 Frank Street, searching the contents of abandoned trash from the residence.  Id. ¶ 101.  In the trash, Plaintiff observed

evidence of suspected illegal drug activity, *i.e.*, "owe sheets," cigarillo wrappers, marijuana seeds and stems, straws cut in half and knotted balloons.  Id. ¶ 102.  Due to concerns about the legality of the trash pull, Plaintiff's DANET supervisor directed that the report of the trash pull indicate negative results.  Id. ¶ 103.

On May 22, 2012, Plaintiff received an anonymous letter from a "Concerned Citizen" requesting action about the possible drug activity at 122 Frank Street.  Id. ¶ 104.  The letter reported that a relative of the woman residing at 122 Frank Street had been shot at the other end of Frank Street.  Id.  The letter further provided a list of ten license plate numbers for vehicles observed to be daily visitors to 122 Frank Street.  Id.

On May 24, 2012, Plaintiff conducted surveillance of 122 Frank Street, observing a high volume of foot traffic as well as hand-to-hand transactions between John Michael Scott, Jr. and unknown individuals.  Id. ¶ 105.  Mr. Scott was known to Plaintiff to be a drug dealer.  Id.

Also on May 24, 2012, several occupants of 122 Frank Street were observed leaving the residence in a vehicle that was later stopped by police and found to have marijuana therein.  Id. ¶ 106.  The vehicle's occupants admitted to smoking marijuana at 122 Frank Street.  Id.

On June 15, 2012, Plaintiff conducted surveillance at 122 Frank Street and observed "a relatively high volume of foot traffic to and from the residence and several hand-to-hand transactions on the front porch."  Id. ¶ 107.

On July 4, 2012, Plaintiff observed a man exit 122 Frank Street on foot.  Id. ¶ 108.  Plaintiff further observed a bulge in the waistband of the man's shorts, which he suspected was a firearm.  Id.  Plaintiff observed the man enter a vehicle, the license plate of which was one of those listed on the letter from the "Concerned Citizen."  Id. ¶ 109.  Plaintiff followed this vehicle and, after observing several Vehicle Code violations, he initiated a traffic stop.  Id. ¶ 110.  In the

course of the stop, a search of the vehicle was conducted, which revealed that the operator, Travon Fuller, was in possession of a stolen hand gun.  Id. ¶ 111.

On July 5, 2012, Plaintiff used a confidential informant ("CI") to conduct a controlled buy of drugs at 122 Frank Street.  Id. ¶¶ 112-115.  The CI purchased marijuana during the buy and observed inside the residence "marijuana packaged for sale, heroin stamp bags, various pills and multiple firearms."  Id. ¶¶ 114-115.

On July 6, 2012, Plaintiff applied for a search warrant for 122 Frank Street.  Id. ¶ 116. The supporting Affidavit for Probable Cause indicated that the leaseholder for 122 Frank Street was Michele Lang, who had a criminal history that included drug charges.  Id. ¶ 117.  The Affidavit also identified Ms. Lang's son as John Michael Scott, Jr., another resident of 122 Frank Street, who also had a "significant criminal history" that included drug charges.  Id. ¶ 119. Plaintiff also indicated in the Affidavit that Mr. Scott had been involved in a March 8, 2012, shooting on Frank Street.  Id. ¶ 120.

Also on July 6, 2012, Plaintiff applied for a search warrant for 19 Midway Drive, Apartment H, West Mifflin, Pennsylvania, indicating that Ms. Lang also resided at this address Id. ¶¶ 124-125.  Ms. Lang had been frequently observed commuting between the Frank Street and Midway Drive residences.  Id. ¶ 126.

Search warrants for both locations were issued on July 6, 2012.  Id. ¶ 127.

The July 6, 2012, search of 122 Frank Street, at which Plaintiff was present, resulted in the seizure of, *inter alia*, "approximately one pound of marijuana, live ammunition, a large amount of cash, a scale with green leaf-like residue on it, heroin[] stamp bags and several cellular telephones."  Id. ¶ 129.  Part of the cash seized was a $20 bill which had been used in the controlled buy of July 5, 2012.  Id. ¶ 130.  At this time, Ms. Lang and Mr. Scott were detained

and Ms. Lang's minor son was removed from the premises and released to the custody of his aunt. Id. ¶¶ 131-132.

On August 7, 2012, a dependency hearing concerning Ms. Lang's minor son was held in the Court of Common Pleas of Allegheny County before the Honorable Kim Berkeley Clark. Id. ¶ 134. Plaintiff testified at that hearing by telephone. Id. ¶ 135.

Ms. Lang and Mr. Scott were charged with endangering the welfare of a child, corruption of minors, reckless endangerment and numerous drug-related charges; these charges were ultimately withdrawn or nolle prossed. Id. ¶ 136.

On April 10, 2013, Defendant Graber filed a Criminal Complaint and Affidavit of Probable Cause against Plaintiff for charges arising from the search warrant applications and Plaintiff's testimony at the dependency hearing. Id. ¶ 138. Defendant Stephen A. Zappala, Jr. subsequently held a press conference where he emphasized police integrity and announced that the Whitaker Borough Police Department would be required to get approval from his office prior to obtaining search warrants. Id. ¶¶ 143, 146. Subsequently, Plaintiff was acquitted of the criminal charges following a jury trial. Id. ¶ 154.

## 2. Procedural History

Plaintiff filed the operative Amended Complaint on April 8, 2015, against Defendant Graber, individually and in his capacity as a Police Detective for the Allegheny County District Attorney; Defendant Allegheny County, Pennsylvania; Defendant Allegheny County Office of the District Attorney ("ACDA"); and Defendant Stephen A. Zappala, Jr., individually and in his capacity as the District Attorney of Allegheny County, Pennsylvania.[2] ECF No. 13. On June 30,

---

[2] It is well established that a suit against a government official in his or her "official capacity" is actually a suit against the entity itself. Bronowicz v. Allegheny Cty., 2015 WL 5559884, *4 n.11 (3d Cir. Sept. 22, 2015). Thus, the claims against Defendants Graber and Zappala in their official capacities are duplicative of the claim against Defendant ACDA. Thus, it is recommended that the official capacity claims be dismissed entirely.

2015, Defendants filed the instant Motion to Dismiss and a Brief in support thereof.  ECF Nos. 18, 19.  On August 14, 2015, Plaintiff filed a Response to the Motion to Dismiss.  ECF No. 23. On August 27, 2015, Defendants filed a Reply Brief.  ECF No. 24.  The Motion to Dismiss is now ripe for review.

**B.      STANDARD OF REVIEW**

As the United States Supreme Court explained in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  <u>Id.</u> at 570.  In assessing the merits of a claim subject to a motion to dismiss, a court must accept all alleged facts as true and draw all inferences gleaned therefrom in the light most favorable to the non-moving party.  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 228 (3d Cir. 2008) (citing <u>Worldcom, Inc. v. Graphnet, Inc.</u>, 343 F.3d 651, 653 (3d Cir. 2003)).  A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'"  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 213 (3d Cir. 2009) (quoting <u>Graff v. Subbiah Cardiology Associates, Ltd.</u>, 2008 WL 2312671 (W.D. Pa. June 4, 2008)).  The scope of review may extend to "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

**C.      DISCUSSION**

**1.      Count I: False Arrest/Unlawful Seizure (Stillwell)**

Plaintiff alleges that Defendants caused criminal charges related to the Stillwell case to be brought against him without probable cause, in violation of his rights under the Fourth

Amendment to the United States Constitution. ECF No. 13 at 33-34. This claim is brought pursuant to 42 U.S.C. § 1983. Id. Defendants assert multiple bases upon which this claim should be dismissed.

### a.      Probable Cause (All Defendants)

Defendants first assert that Plaintiff's claim must be dismissed because there was probable cause to arrest Plaintiff. ECF No. 19 at 12-18. In order to prevail on a false arrest claim under Section 1983, a plaintiff must demonstrate at trial that the police lacked probable cause to arrest the plaintiff. Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995). In this context, the United States Court of Appeals for the Third Circuit has defined the requisite cause as "reasonable grounds for the initiation of the criminal proceeding." Kossler v. Crisanti, 564 F.3d 181, 194 (3d Cir. 2009). Even if one is arrested pursuant to a warrant that appears to be supported by probable cause, the arrestee may state a claim for false arrest if the prosecuting official "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and . . . such statements or omissions are material, or necessary, to the finding of probable cause." Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000).

Plaintiff was charged with four criminal charges in connection with the Stillwell case: (1) criminal mischief; (2) false swearing; (3) official oppression; and (4) criminal attempt (theft by extortion). It is important to note that if probable cause existed as to any of these four offenses, no liability for false arrest can attach. See Johnson v. Knorr, 477 F.3d 75, 84-85 (3d Cir. 2007).

### (1)      Criminal Mischief

Turning to the first charge, criminal mischief, Plaintiff was alleged to have violated 18 PA. CON. STAT. § 3304(a)(5), which prohibits a person from "intentionally damag[ing] real or

personal property of another."   In the Criminal Complaint, Defendant Graber specifies that Plaintiff "damaged real or personal property of another, namely DANIELLE STILLWELL, causing pecuniary loss in excess of $1,000 . . .."   ECF No. 13-2 at 2.   The accompanying Affidavit of Probable Cause describes how Plaintiff "struck the driver's side window [of the vehicle driven by Ms. Stillwell] twice with his handgun, causing the window to break and create two holes in the glass."   Id. at 8.   The Affidavit further notes that Ms. Stillwell advised Defendant Graber that the damage to the vehicle cost $1,012.00 to repair.   Id. at 9.   Defendants assert that the foregoing facts are sufficient to establish probable cause that Plaintiff committed criminal mischief.

Plaintiff does not dispute those facts.   Plaintiff admits in the Amended Complaint that he "utilized the heel of his firearm's handle as a breaching tool to break the driver's side window . . .."   ECF No. 13 ¶ 45.   However, Plaintiff alleges that those facts cannot support a conclusion that he acted criminally.   He alleges that they reflect a "justified, necessary, acceptable and/or privileged use of force as a police officer under the circumstances . . .."   Id. ¶ 90d.   He further alleges that Ms. Stillwell was not the owner of the vehicle involved.   Id. ¶ 90e.

The disputed ownership of the vehicle is not relevant to the instant issue.   Plaintiff does not dispute that the vehicle was owned by "another," which is what the statute requires.   Further, while Plaintiff's act in breaking the vehicle's window may have been justified and privileged, there is no dispute that it was an intentional infliction of damage to the personal property of another.   Accordingly, there was undisputed evidence of probable cause to support the application for the warrant for criminal mischief.

Because probable cause existed for this charge, Plaintiff cannot establish a claim for false arrest.   See Shaffer v. City of Pittsburgh, 2015 WL 4878497, *8 (W.D. Pa. filed August 14,

2015) (dismissing false arrest claim because the defendants had probable cause to arrest even where the plaintiff was ultimately acquitted of charges). Therefore, it is recommended that the Motion to Dismiss be granted as to Count I: false arrest/unlawful seizure.

### b. Additional Grounds

Defendants rely on multiple additional grounds to dismiss this claim which are specific to individual Defendants. In light of the finding of probable cause to arrest Plaintiff, the remaining bases upon which Defendants seek to dismiss this claim do not need to be addressed.

### 2. Count II: Malicious Prosecution (Stillwell)

Plaintiff alleges that Defendants initiated, pursued, extended and participated in the unlawful criminal proceedings against Plaintiff related to the Stillwell case, acting with malice, bad faith and for a purpose other than justice, in violation of his rights under the Fourth Amendment to the United States Constitution. ECF No. 13 at 34-35. This claim is brought pursuant to 42 U.S.C. § 1983. Id. Defendants assert multiple bases upon which this claim should be dismissed.

At the outset, the Court recognizes that the United States Court of Appeals for the Third Circuit has held:

> To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

McKenna v. City of Phila., 582 F.3d 447, 461 (3d Cir. 2009) (citation omitted). Accordingly, Plaintiff must allege sufficient facts to state a claim for malicious prosecution.

### a.      Probable Cause (All Defendants)

Defendants first assert that Plaintiff's malicious prosecution claim must be dismissed because there was probable cause to arrest Plaintiff. Unlike a claim for false arrest (as in Count I), a finding of probable cause on one criminal charge does not foreclose a claim for malicious prosecution for other charges involving different elements. Johnson, 477 F.3d at 84-85. Thus, we must consider each criminal charge separately.

### (1)      Criminal Mischief

As discussed above, there was probable cause to support the initiation of a criminal proceeding on the charge of criminal mischief. Accordingly, Plaintiff cannot establish a claim for malicious prosecution of this charge. As such, it is recommended that the Motion to Dismiss be granted as to Count II: malicious prosecution as to the charge of criminal mischief.

### (2)      False Swearing

The charge of false swearing was based on a statement that Plaintiff made in the Affidavit of Probable Cause in support of the Criminal Complaint against Ms. Stillwell. Therein, he stated:

> I initiated a traffic stop on 837 just past East Mifflin Road with visual and audible signals, displayed proper identification and requested the assistance of a marked unit. Just as I exited the patrol vehicle, the [Stillwell vehicle] pulled off; at the same time the Marked Patrol unit was arriving. I initiated pursuit of the vehicle and informed dispatch that the vehicle fled the scene. We were traveling at speeds up to 50 MPH in a marked 40 mph zone until we reached traffic in front of Kennywood Park. Kennywood has a large volume of pedestrian crossing from the park to the parking lot. At this time, there were three marked units with me.
>
> I exited my vehicle and instructed the driver out of the car.

ECF No. 13-2 at 23 (emphasis added).

In the Criminal Complaint against Plaintiff, Defendant Graber specifies that Plaintiff "swore or affirmed in an affidavit of probable cause submitted to a magisterial district judge that at the time of a traffic stop resulting in said charges, [Plaintiff] – a police officer in civilian attire – was accompanied and assisted by three uniformed police officers when no such officers were present . . .." Id. at 2. The accompanying Affidavit of Probable Cause describes the basis for the charge:

> Contrary to [Plaintiff's] Affidavit of Probable Cause sworn to in support of the charges filed against Stillwell, there were no other law enforcement officers present at the time [Plaintiff] approached Stillwell's [vehicle] and broke the window with his firearm, nor when [Plaintiff] removed Stillwell from her vehicle and placed her in custody. In fact, all three police officers interviewed independently stated to your affiant that Stillwell had been outside her vehicle and in handcuffs prior to their arrival.
>
> The alleged presence of three uniformed police officers at the time Stillwell was approached by [Plaintiff] at gunpoint and removed from her vehicle – as stated within [Plaintiff's] sworn affidavit – served to "legitimize" the actions taken by [Plaintiff] as the scene and to enhance the probable cause offered to the Magisterial District Judge as part of the information used to charge Stillwell.

Id. at 16. Defendants assert that the foregoing facts are sufficient to establish probable cause that Plaintiff committed the offense of false swearing. That crime is codified at 18 Pa. Con. Stat. § 4903(a), which provides:

> § 4903. False swearing.
>
> (a) *False swearing in official matters.* –
> A person who makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of such a statement previously made, when he does not believe the statement to be true is guilty of a misdemeanor of the second degree if:
>
> **(1)** the falsification occurs in an official proceeding; or
>
> **(2)** the falsification is intended to mislead a public servant in performing his official function.

Plaintiff points out that he did not refer to "uniformed police officers" as was alleged. ECF No. 23 at 16 n.2. Rather, he asserts, he referred to "marked units," which, he argues, makes his statement true. Id. The units were "with him" in the sense that that they were traveling in the vicinity, arriving seconds after he arrived at Kennywood. Id. Plaintiff also alleges that the disputed statement could not have been intended to mislead the magisterial district judge where it was not material to the criminal charges he was filing against Ms. Stillwell. ECF No. 13 ¶ 90l.

Accepting Plaintiff's allegations as true, his statement to a magisterial district judge that marked units were "with him," coupled with those officers' statements that they did not arrive until after Ms. Stillwell was in custody, provided Defendant Graber with reasonable grounds to support the application for the warrant, *i.e.*, probable cause. Accordingly, Plaintiff cannot establish a claim for malicious prosecution of this charge. It is recommended that the Motion to Dismiss be granted as to Count II: malicious prosecution as to the charge of false swearing.

### (3)     Official Oppression

This charge concerned the events following Ms. Stillwell's arrival at the Whitaker Borough Police Station. In the Criminal Complaint against Plaintiff, Defendant Graber states that Plaintiff, "as a sworn law enforcement officer and on duty, did threaten to arrest the victim and place her in jail if the victim failed to pay for damages cause to [Plaintiff's] firearm, which was damaged when it was used by [Plaintiff] to strike and break the victim's driver's side window . . .." ECF 13-2 at 3. Defendant Graber further elaborated in the Affidavit for Probable Cause:

> Notwithstanding his communications with Chief Vargo on the night of this incident, [Plaintiff] clearly provided Stillwell only two choices: accept total "responsibility" for the incident – including the damage [Plaintiff] caused to her window and the cost to repair the damage to [Plaintiff's] firearm caused by striking her window – in which case [Plaintiff] would not file any charges against Stillwell; or, refuse to accept "responsibility" and be

charged by [Plaintiff]. This option, offered the night of Stillwell's incident, included the immediate threat of going to jail and the potential long-term negative impact on her employment should Stillwell be adjudicated guilty of such charges.

Id. at 16.

Defendants assert that the foregoing facts are sufficient to establish probable cause that Plaintiff committed the offense of official oppression. That crime is codified at 18 PA. CON. STAT. § 5301, which provides:

§ 5301. Official oppression.

A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he:

(1) subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights; or

(2) denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity.

Plaintiff disputes the existence of probable cause that he acted with the knowledge that his conduct was illegal. ECF No. 23 at 12-13. He argues that his conduct was, in fact, legal, and he points to his conversation with Chief Vargo in which the Chief sanctioned his proposed offer to Ms. Stillwell. Id.

The existence of probable cause for this charge is not clear. It is undisputed that Ms. Stillwell was subject to criminal charges due to the events of that night. How and whether Plaintiff subjected her to an unnecessary infringement on her rights was not specified. Nothing in the Criminal Complaint or the Affidavit of Probable Cause appears to speak to the necessary intent, *i.e.*, that Plaintiff acted with the knowledge that his conduct was illegal. His conversation

with his supervisor, the Whitaker Borough Chief of Police, certainly calls into question the illicit nature of his actions.

At this initial stage, it is recommended that the Motion to Dismiss be denied as to Count II: malicious prosecution as to the charge of official oppression.

### (4) Criminal Attempt (Theft by Extortion)

This charge also concerned the events following Ms. Stillwell's arrival at the Whitaker Borough Police Station. In the Criminal Complaint against Plaintiff, Defendant Graber states that Plaintiff took a substantial step toward the commission of theft by extortion when, "as a sworn law enforcement officer and on duty did threaten to arrest the victim and place her in jail if the victim failed to pay for damages caused to [Plaintiff's] firearm, which was damaged when it was used by [Plaintiff] to strike and break the victim's driver's side vehicle window." ECF No. 13-2 at 3. In the Affidavit of Probable Cause, Defendant Graber does not elaborate beyond the paragraph set forth above, reiterated here:

> Notwithstanding his communications with Chief Vargo on the night of this incident, [Plaintiff] clearly provided Stillwell only two choices: accept total "responsibility" for the incident – including the damage [Plaintiff] caused to her window and the cost to repair the damage to [Plaintiff's] firearm caused by striking her window – in which case [Plaintiff] would not file any charges against Stillwell; or, refuse to accept "responsibility" and be charged by [Plaintiff]. This option, offered the night of Stillwell's incident, included the immediate threat of going to jail and the potential long-term negative impact on her employment should Stillwell be adjudicated guilty of such charges.

Id. at 16.

Defendants assert that the foregoing facts are sufficient to establish probable cause that Plaintiff committed the offense of criminal attempt to commit theft by extortion.

The criminal attempt statute provides, in pertinent part:

§ 901. Criminal attempt.

(a) *Definition of attempt.* –
A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

18 PA. CON. STAT. § 901(a).

The theft by extortion statute provides, in pertinent part:

§ 3923. Theft by extortion.

(a) *Offense defined.* –
A person is guilty of theft if he intentionally obtains or withholds property of another by threatening to:
. . .
(4) take or withhold action as an official, or cause an official to take or withhold action . . ..
. . .

(b) *Defenses.* --It is a defense to prosecution based on paragraphs (a)(2), (a)(3) or (a)(4) of this section that the property obtained by threat of accusation, exposure, lawsuit or other invocation of official action was honestly claimed as restitution or indemnification for harm done in the circumstances to which such accusation, exposure, lawsuit or other official action relates, or as compensation for property or lawful services.

18 PA. CON. STAT. § 3923(a)(4), (b).

Plaintiff asserts that a request for restitution cannot constitute an attempt at theft by extortion. ECF No. 13 ¶ 90r. This assertion is borne out by the defense to the crime of theft by extortion set forth in the statute. 18 PA. CON. STAT. § 3923(b). The facts alleged in the Criminal Complaint and the Affidavit of Probable Cause support Plaintiff's assertion that he sought only restitution and, thus, prohibit a finding that Plaintiff acted with the intent to commit the crime of theft by extortion.

Plaintiff further alleges that he would not have obtained any gain from Ms. Stillwell as the requested restitution would have been provided to Whitaker Borough. Id. ¶ 90t. Defendants

respond, characterizing this distinction a mitigating factor. ECF No. 19 at 15. It is not a mitigating factor. It is an element of the crime. The actor must have the intent to obtain the property. There is nothing in the Criminal Complaint or in the Affidavit of Probable Cause that indicates that Plaintiff sought to personally obtain Ms. Stillwell's property.

It is recommended that the Motion to Dismiss be denied as to Count II: malicious prosecution as to the charge of criminal contempt – theft by extortion.

### b. Policy or Custom (Defendant Allegheny County)

Defendants assert that Count II of the Amended Complaint does not state a claim against Defendant Allegheny County for malicious prosecution because Plaintiff has failed to identify an Allegheny County policy or custom that caused his injury. ECF No. 19 at 22-23.

A party seeking to impose liability under Section 1983 against a municipality must show that the injury was caused by either a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or a "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690-91 (1978).

> If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983.

Pembaur v. City of Cincinnati, 106 S. Ct. 1292, 1299 (1985)(footnote omitted).

In the Amended Complaint, Plaintiff alleges that the criminal charges against him were brought, without probable cause, as a result of the implementation of a policy of Defendant

Allegheny County, Defendant ACDA and Defendant Zappala to earn "public trust by showing the public that police integrity and/or police accountability are important issues to them," ECF No. 13 ¶ 94, and "as a public relations policy to show the public that they were tough on police misconduct." Id. ¶ 152.

Because Plaintiff does allege the existence of a policy, Defendants' argument to the contrary fails. It is thus recommended that the Motion to Dismiss be denied as to Count II as it relates to a policy or custom of Defendant Allegheny County. However, absent more specific allegations of a particular policy, this claim may not survive at the summary judgment stage of this case.

### c. Personal Involvement (Defendant Zappala)

Defendants also argue that the Section 1983 claims against Defendant Zappala should be dismissed due to a lack of allegations of personal involvement. ECF No. 19 at 23-24. This argument is based on Defendants' assertion that "there are no allegations that the DA established or maintained a formal policy or custom." Id. at 23.

Defendants cite to the following law:

> Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." . . .. The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.

A.M. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted).

As set forth above, Plaintiff alleges Defendant Zappala's involvement in establishing a policy which violated Plaintiff's constitutional rights. See, e.g., ECF No. 13 ¶¶ 93-94. Further, at this early stage of the litigation, Plaintiff makes sufficient allegations of Defendant Zappala's

personal involvement in the filing of charges against Plaintiff to support liability under the second theory.  See, e.g., id. ¶ 93.[3]  It is thus recommended that the Motion to Dismiss be denied as to Count II as it relates to Defendant Zappala and personal involvement.

### d.  Immunity (Defendants Zappala and ACDA)

Defendants assert that Defendants Zappala and ACDA enjoy absolute immunity from a Section 1983 claim for malicious prosecution.  ECF No. 19 at 23-24.  Indeed, in initiating a prosecution and in presenting a case, a prosecutor enjoys absolute immunity under Section 1983.  Imbler v. Pachtman, 424 U.S. 409, 431 (1976).  However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  Only "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.  Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made."  Id. (emphasis added).  When a prosecutor performs an investigatory function such as determining whether probable cause to arrest exists, the prosecutor is entitled only to qualified immunity.  Walker v. Clearfield Cty. Dist. Att'y, 413 F. App'x 481 (3d Cir. 2011) (citing Buckley, 509 U.S. at 275-76).

The United States Supreme Court's decision in Buckley concerned a Section 1983 action brought by Stephen Buckley against, inter alia, the state's attorneys who prosecuted him.  One issue before the Supreme Court was whether the prosecutors were entitled to absolute immunity

---

[3]  There may be some cause to question the timing of Defendant Zappala's alleged involvement, i.e., whether it arose after the filing of the charges related to the Stillwell case.  However, Defendants have not raised this argument.

for their pre-indictment actions in attempting to determine whether a boot print found at the crime scene belonged to Mr. Buckley. Id. at 274. The Supreme Court determined, "[t]he prosecutors do not contend that they had probable cause to arrest [Mr. Buckley] or to initiate judicial proceedings during that period. Their mission at that time was entirely investigative in character. A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." Id. The Buckley Court further explained:

> That the prosecutors later called a grand jury to consider the evidence this work produced does not retroactively transform that work from the administrative into the prosecutorial. A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as "preparation" for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial. When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same.

Id. at 275-76 (footnote omitted).

Plaintiff alleges that Defendants Zappala and ACDA acted in an investigatory manner, inter alia, by directing review of Plaintiff's case files in "an effort to discover circumstances and/or opportunities where they could attempt to file additional criminal cases against [Plaintiff] . . .." ECF No. 13 ¶ 94.[4] At this early stage of the litigation, Plaintiff makes sufficient allegations of investigatory actions by Defendants Zappala and ACDA to avoid complete dismissal of Count II against them based on absolute immunity.

It is recommended that the Motion to Dismiss be denied as to Count II as to investigatory actions taken by Defendants Zappala and ACDA as to the Stillwell case. It is recommended that the Motion to Dismiss be granted as to Count II as to prosecutorial actions taken by Defendants Zappala and ACDA as to the Stillwell case.

---

[4] There may be some cause to question the timing of the alleged investigatory involvement, i.e., whether it arose after the filing of the charges related to the Stillwell case. However, Defendants have not raised this argument.

### e.    Qualified Immunity (Defendant Graber)

Defendants include an argument entitled "Det. Graber is qualifiedly immune from claims of false arrest and malicious prosecution."  ECF No. 19 at 24.  However, the substance of that argument does not concern qualified immunity or malicious prosecution.  Instead, it is a recitation of the elements of false arrest and a discussion of Defendant Graber's liability for false arrest in the Stillwell case.  There is no need to address this argument because it has been recommended that the Motion to Dismiss be granted as to Count I: false arrest.

### 3.    Count III: Malicious Prosecution (Stillwell)

### a.    Immunity (Defendant Zappala)

Plaintiff alleges that Defendants Graber and Zappala initiated and continued criminal proceedings against Plaintiff related to the Stillwell case, without probable cause in violation of Plaintiff's rights.  ECF No. 13 at 35-36.  This claim is brought pursuant to Pennsylvania law.

Defendants move to dismiss only as to Defendant Zappala and assert that he is immune from the state claim for malicious prosecution because he is a high public official who was acting in the course of his official duties.  ECF No. 19 at 25.  Plaintiff does not respond to this argument.

Pennsylvania law provides that "high public officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties."  Durham v. McElynn, 772 A.2d 68, 69 (Pa. 2001).  District attorneys are accorded this absolute immunity. Id. at 69-70.

Accordingly, it is recommended that the Motion to Dismiss be granted as to Count III as to Defendant Zappala.

####            4.            Count IV: Abuse of Process (Stillwell)

#####            a.            Immunity (Defendant Zappala)

Plaintiff alleges that Defendants Graber and Zappala, in initiating and continuing criminal proceedings against Plaintiff related to the Stillwell case, caused the legal process to be used against Plaintiff for a purpose for which it was not designed, in violation of Plaintiff's rights. ECF No. 13 at 36-37. This claim is presumed to be brought pursuant to Pennsylvania law.[5]

Defendants move to dismiss only as to Defendant Zappala and assert that he is immune from the state claim for abuse of process as a high public official who was acting in the course of his official duties. ECF No. 19 at 25. Plaintiff does not respond to this argument.

Pennsylvania law provides that "high public officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties." Durham, 772 A.2d at 69. District attorneys are accorded this absolute immunity. Id. at 69-70.

Accordingly, it is recommended that the Motion to Dismiss be granted as to Count IV as to Defendant Zappala.

####            5.            Count V: False Arrest/Unlawful Seizure (Lang)

Plaintiff alleges that Defendants caused criminal charges related to the Lang case to be brought against him without probable cause, in violation of his rights under the Fourth Amendment to the United States Constitution. ECF No. 13 at 37-38. This claim is brought pursuant to 42 U.S.C. § 1983. ECF No. 13 at 37-38. Defendants assert multiple bases upon which this claim should be dismissed.

---

[5]  Unlike the other counts in the Amended Complaint, Plaintiff does not identify the legal basis of Counts IV and VIII, the abuse of process claims. ECF No. 13 at 36, 40. Defendants treat the abuse of process claims as state claims. ECF No. 19 at 25. In his Response, Plaintiff does not contest that treatment and notes that "The State Law Claims Are Not Asserted Against Allegheny County or the District Attorney's Office But Should Otherwise Proceed." ECF No. 23 at 26. The abuse of process claims, like the identified state claims for malicious prosecution, are asserted only against Defendants Graber and Zappala. Further, in his Section 1983 claims, Plaintiff identifies a United States Constitution provision claimed to have been violated; he has not done so for these claims. Thus, they are presumed to be state law claims.

### a.     Probable Cause (All Defendants)

Defendants first assert that Plaintiff's claim must be dismissed because there was probable cause to arrest Plaintiff.  ECF No. 19 at 12-13, 18-21.  As set forth in the analysis of Count I, in order to prevail on a false arrest claim under Section 1983, a plaintiff must demonstrate at trial that the police lacked probable cause to arrest the plaintiff.  Groman, 47 F.3d at 634.  In this context, the United States Court of Appeals for the Third Circuit has defined the requisite cause as "reasonable grounds for the initiation of the criminal proceeding."  Kossler, 564 F.3d at 194.  Even if one is arrested pursuant to a warrant that appears to be supported by probable cause, the arrestee may state a claim for false arrest if the prosecuting official "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and . . . such statements or omissions are material, or necessary, to the finding of probable cause."  Wilson, 212 F.3d at 786-87.

In connection with the Lang case, Plaintiff was charged with: (1) perjury; (2) false swearing (2 counts); (3) unsworn falsification to authorities (2 counts) and (4) official oppression (2 counts).  If probable cause existed as to any of these offenses, no liability for false arrest can attach.  See Johnson, 477 F.3d at 84-85.

### (1)     Perjury

Turning to the first charge, perjury, Plaintiff was alleged to have violated 18 PA. CON. STAT. § 4902(a), which provides:

> § 4902.  Perjury.
>
> (a) *Offense defined.* --A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true.

In the Criminal Complaint against Plaintiff, Defendant Graber alleges that Plaintiff committed perjury at the hearing before Judge Kim Berkeley Clark on August 7, 2012. ECF No. 13-5 at 2. In the accompanying Affidavit of Probable Cause, Defendant Graber identifies Plaintiff's allegedly false statement made under oath, as "I also arrested an individual three days prior to that with a stolen firearm leaving that residence." Id. at 19. The Affidavit further provides:

> This statement referred to the July 4, 2012 arrest of Travon Fuller within [Plaintiff's] July 6, 2012, affidavit of the search warrant application for Lang's residence. . . . [T]he statement of Whitaker Police Officer Patrick Schmidt regarding the July 4, 2012 traffic stop and subsequent arrest of Fuller, and [Plaintiff's] own sworn criminal complaint affidavit for Fuller's arrest contradicts both [Plaintiff's] sworn search warrant affidavit and his sworn testimony during the adjudicatory hearing before the Court.

Id.

Earlier in the Affidavit, Defendant Graber describes Officer Schmidt's statement as follows:

> According to Officer Schmidt, they had been travelling up Whitaker Way, with [Plaintiff] driving, when they observed a vehicle turning right from Frank Street onto Whitaker Way. The operator of that vehicle – unknown to Schmidt at the time – failed to use a turn signal when entering Whitaker Way. [Plaintiff] pulled the vehicle over on Whitaker Street near the entrance of Mon View Heights . . ..
>
> . . .
>
> This officer asked Officer Schmidt if he and/or [Plaintiff] had conducted surveillance on any residence immediately prior to the traffic stop of Fuller, or whether he and/or [Plaintiff] had observed Fuller on foot prior to the traffic stop. Schmidt stated that neither had occurred. This officer then asked Schmidt specifically if surveillance of the Lang residence at 122 Frank Street had taken place prior to the traffic stop, and Schmidt stated that he and [Plaintiff] had been working together that entire evening in the same vehicle, and that no surveillance of the Lang residence at 122 Frank Street had been conducted during that time period. Schmidt also reiterated that the Fuller traffic stop had been initiated as a result of the initial observations of the (then) unidentified operator's failure to signal when turning, and that neither he, nor to his knowledge, [Plaintiff,] knew Fuller's identity as the

> operator prior to stopping the vehicle. Schmidt stated that [Plaintiff] made
> no mention of any prior surveillance of Fuller, and certainly did not advise
> Schmidt of any prior knowledge or suspicion that Fuller possessed a
> firearm.

Id. at 16-17.

Additionally, Defendant Graber cites the lack of any "mention in [Plaintiff's] affidavit of probable cause in support of the criminal complaint for Travon Fuller's arrest of any prior surveillance conducted by [Plaintiff] in which Fuller was observed in possession of a firearm." Id. at 16. The facts set forth in that affidavit as to the initial observation of Mr. Fuller in his vehicle rather than on foot are consistent with Officer Schmidt's statement. Id.

Plaintiff asserts, "[Plaintiff's] testimony regarding his arrest of Travon Fuller after observing him leave 122 Frank Street is true and there exists no evidence to the contrary." ECF No. 23 at 18. Plaintiff further alleges that Detective Graber's reliance on Officer Schmidt's statement was misplaced, explaining:

> Although [Defendant] Graber's Affidavit claims that Officer Schmidt stated
> neither he, nor [Plaintiff] "observed Fuller on foot prior to the traffic stop,"
> what Officer Schmidt is believed to have said (and what he has testified to
> in related proceedings) is that he did not recall seeing Mr. Fuller on foot
> leaving 122 Frank St. He did not deny that the incident occurred; he merely
> stated that he did not recall. A reasonable police officer should be able to
> interview a witness and understand the difference between a witness stating
> that an incident did not occur and the witness stating that he/she did not
> recall whether or not the incident occurred.

Id. (citations to Amended Complaint omitted).

Plaintiff does not claim that Defendant Graber made false statements in his application for the warrant; rather, he claims that Defendant Graber misunderstood the significance and meaning of Officer Schmidt's statement. Officer Schmidt's statement, as described in the Affidavit, is not subject to multiple meanings on the critical point. Officer Schmidt stated that no surveillance of 122 Frank Street had been conducted prior to the stop of Mr. Fuller. The timeline

of events in Officer Schmidt's statement was corroborated by the criminal complaint affidavit for Mr. Fuller's arrest, which was written by Plaintiff. Thus, Defendant Graber had reasonable grounds to believe that Plaintiff's testimony at the August 7, 2012, hearing was false. Accordingly, there was probable cause to support the application for the warrant for perjury.

Because probable cause existed for this charge, Plaintiff cannot establish a claim for false arrest. Therefore, it is recommended that the Motion to Dismiss be granted as to Count V: false arrest/unlawful seizure.

### b. Additional Grounds

Defendants rely on multiple additional grounds to dismiss this claim which are specific to individual Defendants. In light of the finding of probable cause to arrest Plaintiff, the remaining bases upon which Defendants seek to dismiss this claim do not need to be addressed.

### 6. Count VI: Malicious Prosecution (Lang)

Plaintiff alleges that Defendants initiated, pursued, extended and participated in the unlawful criminal proceedings related to the Lang case against Plaintiff, acting with malice, bad faith and for a purpose other than justice, in violation of his rights under the Fourth Amendment to the United States Constitution. ECF No. 13 at 38-39. This claim is brought pursuant to 42 U.S.C. § 1983. ECF No. 38-39. Defendants assert multiple bases upon which this claim should be dismissed.

As the United States Court of Appeals for the Third Circuit has set forth:

> To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

<u>McKenna</u>, 582 F.3d at 461 (citation omitted).


### a.  Probable Cause (All Defendants)

Defendants first assert that Plaintiff's claim must be dismissed because there was probable cause to arrest Plaintiff. A finding of probable cause on one criminal charge does not foreclose a claim for malicious prosecution for other charges involving different elements. <u>Johnson</u>, 477 F.3d at 84-85. Thus, each criminal charge must be evaluated separately.

### (1)  Perjury

As discussed above, there was probable cause to support the initiation of a criminal proceeding on the charge of perjury. Accordingly, Plaintiff cannot establish a claim for malicious prosecution of this charge. It is recommended that the Motion to Dismiss be granted as to Count VI: malicious prosecution as to the charge of perjury.

### (2)  False Swearing

Plaintiff was charged with two counts of false swearing, one count each for the two search warrants Plaintiff sought on July 6, 2012. The Affidavit of Probable Cause in support of the charges against Plaintiff lists multiple false statements alleged to have been made by Plaintiff in the essentially identical Affidavits of Probable Cause in support of the search warrant applications. ECF No. 13-5 at 11-17. One of these allegedly false statements is based on a statement similar to the testimony that was the subject of the perjury charge. In both of the Affidavits, Plaintiff stated:

> On 7-4-2012 I was once again monitoring the traffic at 122 Frank Street, Whitaker PA 15120. I observed a tall black male wearing a white T-Shirt and Shorts exit the residence at 122 Frank Street and proceed to [sic] down the street. This individual was in sight the entire time and I observed a bulge in the waistband with what I believed to be a firearm. I observed the individual get into a Blue Ford 500 bearing PA Registration HXH 6530, this

> is the same vehicle mentioned in the citizen complaint on 5-22-2012. I
> initiated a traffic stop on Whitaker Way. The operator was Travon Fuller.

Id. at 29, 37.

The crime of false swearing is codified as follows.

> § 4903. False swearing.
>
> (a) *False swearing in official matters.* –
>
> A person who makes a false statement under oath or equivalent affirmation,
> or swears or affirms the truth of such a statement previously made, when he
> does not believe the statement to be true is guilty of a misdemeanor of the
> second degree if:
>
> > (1) the falsification occurs in an official proceeding; or
>
> > (2) the falsification is intended to mislead a public servant in performing
> > his official function.

18 PA. CON. STAT. § 4903(a)(1-2).

As set forth above, in his Affidavit, Defendant Graber cited Officer Schmidt's statement that no surveillance of the 122 Frank Street had been conducted prior to the stop of Mr. Fuller. The timeline of events in Officer Schmidt's statement was corroborated by the additionally cited criminal complaint affidavit for Mr. Fuller's arrest, which was written by Plaintiff. Thus, Defendant Graber had reasonable grounds to believe that Plaintiff's above-cited statements in the Affidavits of Probable Cause in support of the search warrant applications were false. Accordingly, Plaintiff cannot establish a claim for malicious prosecution of this charge. It is recommended that the Motion to Dismiss be granted as to Count VI: malicious prosecution as to the charge of false swearing.

### (3)     Unsworn Falsification to Authorities

Plaintiff was charged with two counts of unsworn falsification to authorities, one count each for the two search warrants Plaintiff sought on July 6, 2012. The charges were based on the

same statements as were the false swearing charges. Again, only the statements related to Mr. Fuller need to be addressed in order to find sufficient probable cause to dismiss this portion of the claim.

§ 4904. Unsworn falsification to authorities.

(a) *In general.* –

A person commits a misdemeanor of the second degree if, with intent to mislead a public servant in performing his official function, he:

(1) makes any written false statement which he does not believe to be true . . ..

18 PA. CON. STAT. § 4904(a)(1).

For the same reasons set forth above in regards to false swearing, Defendant Graber had reasonable grounds to believe that Plaintiff's statements related to Mr. Fuller in the Affidavits of Probable Cause in support of the search warrant applications were false. Accordingly, Plaintiff cannot establish a claim for malicious prosecution of these charges. It is recommended the Motion to Dismiss be granted as to Count VI: malicious prosecution as to the charge of unsworn falsification to authorities.

### (4)     Official Oppression

Plaintiff was charged with two counts of official oppression: one concerning Michele Lang and one concerning Dontae Sanders and Terri Simmons. Official oppression is:

§ 5301. Official oppression.

A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he:

(1) subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights . . ..

18 Pa. Con. Stat. § 5301(1).

### (a)    Michele Lang

The Affidavit of Probable Cause in support of the official oppression charges against

Plaintiff sets forth the following:

> Your affiant avers that [Plaintiff], through the course of his conduct as
> contained herein, subjected both Michele Lang and John Scott to arrest,
> detention, search, seizure, mistreatment, dispossession, assessment, lien or
> other infringement of personal or property rights.  During the execution [of]
> the 122 Frank Street search warrant, [Plaintiff] seized Lang's Chevrolet
> Cobalt, even though [Plaintiff] had no authorization within the search
> warrant to do so. [Plaintiff] did not gain any such justification to seize the
> vehicle as a result of the search of this vehicle (which appears to have been
> permitted pursuant to the search warrant) as there is no record or report
> indicating that any illegal narcotics, weapons or contraband were discovered
> during the search.  Michele Lang's subsequent attempts to regain possession
> of her vehicle after this seizure were refused or ignored.  After [Plaintiff's]
> initial attempts to have Lang's vehicle forfeited through the Office of the
> District Attorney were denied, [Plaintiff] purported to GM Financial that
> illegal drugs had been found within Lang's vehicle during the search in
> order to facilitate the vehicle's repossession.   GM Financial then
> repossessed Lang's vehicle based on the false information provided by
> [Plaintiff].  Michele Lang was then charged $4,279.40 by GM Financial for
> the loan payoff and the costs of repossession – a financial penalty Lang
> would not have incurred had her vehicle been released.

ECF No. 13-5 at 23-24.

Plaintiff asserts that the charge of official oppression concerning Michele Lang is

unsupportable where the vehicle was legally seized pursuant to the search warrant.  ECF No. 13

at 29; ECF No. 23 at 23.   Defendants assert that, even assuming the search warrant for the

vehicle was legally obtained, seizure of the vehicle was outside of its scope.  ECF No. 19 at 21.

Review of the search warrant application reveals that the vehicle is not listed on the "ITEMS TO

BE SEIZED" attachment thereto.  ECF No. 13-3 at 2.   Accordingly, Defendant Graber had

reasonable grounds to initiate prosecution for official oppression where there was evidence that

Plaintiff took advantage of his official capacity to subject Michele Lang to infringement of her

property rights to her vehicle. In other words, there was probable cause for this charge. It is recommended the Motion to Dismiss be granted as to Count VI: malicious prosecution as to the charge of official oppression as to Michele Lang.

**(b)**      **Dontae Sanders and Terri Simmons**

In the Affidavit of Probable Cause in support of the charges against Plaintiff, Defendant Graber sets forth the following:

> On March 18, 2012, Allegheny County Sheriff's Office Deputy Donald Macejka was interviewed by your affiant. Macejka related that he and several other Sheriff's Detectives had been assigned by their department to assist Whitaker PO Davis in the execution of two search warrants. Macejka and the other deputies met with [Plaintiff] and other officers at Whitaker Police Department. Macejka also recalled West Mifflin officers there as well. Macejka, along with officers from West Mifflin PD, was involved in the execution of the search warrant at 19H Midway Drive, in Mon View Heights, which was entered without incident. Macejka recalled locating a B/M (Dontae Sanders) in the residence who possessed a small amount of marijuana on his person. There were no firearms or any other narcotics discovered at the residence. [Plaintiff] appeared at the residence prior to officers clearing the area.

> Your affiant also interviewed Dontae Sanders, who confirmed that he had been present at the 19H Midway Drive residence when the search warrant had been served, and that he had been in possession of a "nickel bag" of marijuana. Sanders stated that he had been at the residence with his two young (3 and 4 years old) daughters at the time. Sanders also confirmed that he had been given a break by the officer who discovered the marijuana due to his pending entry into military service. Sanders advised that the tenant of the residence at the time the warrant was served was Terri Simmons, the mother of his two daughters.

> Your affiant confirmed through West Mifflin Police Department records that although the previous tenant was Michele Lang, Terri Simmons has resided at 19H Midway Drive since July 21, 2001. According to these records, Michele Lang moved from that residence approximately one year **prior** to the execution of Davis's search warrant.

> . . .

> Your affiant avers that [Plaintiff,] through the course of his conduct as contained herein, subjected both Dontae Sanders and Terri Simmons to

32

> arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights by the execution of a search warrant at the 19H Midway Drive address in search of evidence against Michele Lang and John Scott, Jr., when – according to Mon View residency records available to and supplied by West Mifflin Police Department – Lang had not resided at that residence since July 21, 2011.

ECF No. 13-5 at 18, 24 (emphasis in original).

Plaintiff asserts that the charge of official oppression concerning Sanders and Simmons is unsupportable because, at the time of the search warrant application, he believed that Michele Lang resided at the Midway Drive residence. ECF No. 23 at 23. Defendants assert that the search was illegal. ECF No. 19 at 21. Nothing in the Criminal Complaint or the Affidavit of Probable Cause appears to speak to the necessary intent, *i.e.*, that Plaintiff acted with the knowledge that his conduct was illegal. Instead, the implication is that Plaintiff acted negligently in failing to conduct a check as to current resident of the Midway Drive residence. There appears to be no dispute that Plaintiff observed Michele Lang travelling between the Frank Street and Midway Drive residences.

Accordingly, probable cause for this portion of the official oppression charge was not clearly established. It is recommended the Motion to Dismiss be denied as to Count VI: malicious prosecution as to the charge of official oppression as to Dontae Sanders and Terri Simmons.

### b. Policy or Custom (Defendant Allegheny County)

Defendants assert that the Amended Complaint does not state a claim against Defendant Allegheny County for malicious prosecution because Plaintiff has failed to identify an Allegheny County policy or custom that caused his injury. ECF No. 19 at 22-23.

A party seeking to impose liability under Section 1983 against a municipality must show that the injury was caused by either a "policy statement, ordinance, regulation, or decision

officially adopted and promulgated by that body's officers," or a "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91.

> If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983.

Pembaur, 106 S. Ct. at 1299 (footnote omitted).

In the Amended Complaint, Plaintiff alleges that the criminal charges against him were brought, without probable cause, as a result of "an aggressive implementation" of a policy of Defendant Allegheny County, Defendant ACDA and Defendant Zappala to establish public trust by displaying the importance of police integrity/police accountability. ECF No. 13 ¶¶ 143-148, 152.

At this early stage of the case, because Plaintiff does allege the existence of a policy, Defendants' argument to the contrary fails. It is thus recommended that the Motion to Dismiss Count VI be denied as it relates to a policy or custom of Defendant Allegheny County.

### c. Personal Involvement (Defendant Zappala)

Defendants also argue that the Section 1983 claims against Defendant ACDA should be dismissed due to a lack of allegations of personal involvement. ECF No. 19 at 23-24. This argument is based on Defendants' assertion that "there are no allegations that the DA established or maintained a formal policy or custom." Id. at 23.

Defendants cite to the following law:

> Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, "with deliberate indifference to the

consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." . . .. The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.

A.M., 372 F.3d at 586 (citation omitted).

As set forth above, Plaintiff alleges Defendant Zappala's involvement in establishing a policy which violated Plaintiff's constitutional rights. See, e.g., ECF No. 13 ¶ 143. Further, Plaintiff makes sufficient allegations of Defendant Zappala's personal involvement in the filing of charges against Plaintiff to support liability under the second theory. See, e.g., id. ¶ 148. It is thus recommended that the Motion to Dismiss Count VI be denied as it relates to Defendant Zappala and personal involvement.

### d. Immunity (Defendants Zappala and ACDA)

Defendants assert that Defendants Zappala and ACDA enjoy absolute immunity from a Section 1983 claim for malicious prosecution. ECF No. 19 at 23-24. Indeed, in initiating a prosecution and in presenting a case, a prosecutor enjoys absolute immunity under Section 1983. Imbler v. Pachtman, 424 U.S. 409, 431 (1976). However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). Only "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." Id. (emphasis added). When a prosecutor performs an investigatory

function such as determining whether probable cause to arrest exists, the prosecutor is entitled only to qualified immunity.  Walker v. Clearfield Cty. Dist. Att'y, 413 F. App'x 481 (3d Cir. 2011) (citing Buckley, 509 U.S. at 275-76).

The United States Supreme Court's decision in Buckley concerned a Section 1983 action brought by Stephen Buckley against, *inter alia*, the state's attorneys who prosecuted him.  One issue before the Supreme Court was whether the prosecutors were entitled to absolute immunity for their pre-indictment actions in attempting to determine whether a boot print found at the crime scene belonged to Mr. Buckley.  Id. at 274.  The Supreme Court determined, "[t]he prosecutors do not contend that they had probable cause to arrest [Mr. Buckley] or to initiate judicial proceedings during that period.  Their mission at that time was entirely investigative in character.  A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested."  Id.  The Buckley Court further explained:

> That the prosecutors later called a grand jury to consider the evidence this work produced does not retroactively transform that work from the administrative into the prosecutorial.  A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as "preparation" for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial.  When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same.

Id. at 275-76 (footnote omitted).

Plaintiff alleges that Defendants Zappala and ACDA acted in an investigatory manner, *inter alia,* by directing review of Plaintiff's case files in "an effort to discover circumstances and/or opportunities where they could attempt to file additional criminal cases against [Plaintiff]

. . ..." ECF No. 13 ¶ 94.[6]   At this early stage of the litigation, Plaintiff makes sufficient allegations of investigatory actions by Defendants Zappala and ACDA to avoid complete dismissal of Count II against them based on absolute immunity.

It is recommended that the Motion to Dismiss be denied as to Count VI as to investigatory actions taken by Defendants Zappala and ACDA as to the Lang case.   It is recommended that the Motion to Dismiss be granted as to Count VI as to prosecutorial actions taken by Defendants Zappala and ACDA as to the Lang case.

### 7.   Count VII: Malicious Prosecution (Lang)

### a.   Immunity (Defendant Zappala)

Plaintiff alleges that Defendants Graber and Zappala initiated and continued criminal proceedings against Plaintiff related to the Lang case, without probable cause in violation of Plaintiff's rights.  ECF No. 13 at 39-40.  This claim is brought pursuant to Pennsylvania law.

Defendants move to dismiss only as to Defendant Zappala, asserting that he is immune from the state claim for malicious prosecution because he is a high public official who was acting in the course of his official duties.  ECF No. 19 at 25.  Plaintiff does not respond to this argument.

Pennsylvania law provides that "high public officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties."  Durham, 772 A.2d at 69.  District attorneys are accorded this absolute immunity.  Id. at 69-70.

Accordingly, it is recommended that the Motion to Dismiss be granted as to Count VII as to Defendant Zappala.

---

[6]  There may be some cause to question the timing of the alleged investigatory involvement, *i.e.*, whether it arose after the filing of the charges related to the Stillwell case.  However, Defendants have not raised this argument.

### 8. Count VIII: Abuse of Process (Lang)

#### a. Immunity (Defendant Zappala)

Plaintiff alleges that Defendants Graber and Zappala, in initiating and continuing criminal proceedings against Plaintiff related to the Lang case, caused the legal process to be used against Plaintiff for a purpose for which it was not designed, in violation of Plaintiff's rights. ECF No. 13 at 40. This claim is presumed to be brought pursuant to Pennsylvania law.[7]

Defendants move to dismiss only as to Defendant Zappala, asserting that he is immune from the state claim for abuse of process as a high public official who was acting in the course of his official duties. ECF No. 19 at 25. Plaintiff does not respond to this argument.

Pennsylvania law provides that "high public officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties." Durham, 772 A.2d at 69. District attorneys are accorded this absolute immunity. Id. at 69-70.

Accordingly, it is recommended that the Motion to Dismiss be granted as to Count VIII as to Defendant Zappala.

---

[7] See note 4, *supra*.

### D.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss, ECF No. 18, be granted in part and denied in part as follows:

It is recommended that the Motion to Dismiss be granted as to Count I.

It is recommended that the Motion to Dismiss be granted as to Count II as to the charges of criminal mischief and false swearing and as to prosecutorial actions taken by Defendants Zappala and ACDA as to the Stillwell case.  It is recommended that the Motion to Dismiss as to Count II be denied in all other respects.

It is recommended that Count III be dismissed as to Defendant Zappala.

It is recommended that Count IV be dismissed as to Defendant Zappala.

It is recommended that the Motion to Dismiss be granted as to Count V.

It is recommended that the Motion to Dismiss be granted as to Count VI as to the charges of perjury, false swearing, unsworn falsification to authorities and official oppression as to Michele Lang and as to prosecutorial actions taken by Defendants Zappala and ACDA as to the Lang case.  It is recommended that the Motion to Dismiss as to Count VI be denied in all other respects.

It is recommended that Count VII be dismissed as to Defendant Zappala.

It is recommended that Count VIII be dismissed as to Defendant Zappala.

It is recommended that all claims against Defendants Graber and Zappala in their official capacities be dismissed.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure

to timely file objections will waive the right to appeal.  Brightwell v. Lehman, 637 F.3d 187, 193

n. 7 (3d Cir. 2011).  Any party opposing objections may file their response to the objections

within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

                                    Respectfully submitted,

                                    /s/ Maureen P. Kelly
                                    MAUREEN P. KELLY
                                    CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: November 17, 2015


cc:      The Honorable Mark R. Hornak
         United States District Judge

         All Counsel of Record Via CM-ECF