IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM S. DAVIS, JR., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 14-1416 |
| | ) | Judge Mark R. Hornak/ |
| LYLE GRABER *individually and in his* | ) | Chief Magistrate Judge Maureen P. Kelly |
| *capacity as a Police Detective for the* | ) | |
| *Investigations Unit for the Allegheny* | ) | |
| *County District Attorney*, ALLEGHENY | ) | |
| COUNTY, PENNSYLVANIA; | ) | |
| ALLEGHENY COUNTY OFFICE OF | ) | |
| THE DISTRICT ATTORNEY *and* | ) | Re: ECF No. 45 |
| STEPHEN A. ZAPPALA, JR. | ) | |
| *individually and in his official capacity* | ) | |
| *as the District Attorney of Allegheny* | ) | |
| *County, Pennsylvania,* | ) | |
| Defendants. | ) | |

## **REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

Before the Court is "Defendants' Motion to Dismiss Third Amended Complaint." ECF No. 45. For the reasons that follow, it is respectfully recommended that the Motion to Dismiss be granted.

**II.    REPORT**

    **A.    FACTUAL AND PROCEDURAL BACKGROUND**

        **1.    Facts Alleged in the Complaint**

Plaintiff William S. Davis, Jr. ("Plaintiff") filed the operative Complaint[1] ("the Complaint") on July 14, 2016. ECF No. 43. Therein, he alleges facts concerning two cases that arose during his employment as a police officer for the Whitaker Borough Police Department. Plaintiff's involvement in these cases was the basis for criminal charges brought against him.

---

[1] The operative Complaint is entitled "Second Amended Complaint;" however, it is a "revised" version of another "Second Amended Complaint" filed on April 21, 2016. ECF No. 33.

The initiation and prosecution of those criminal charges are the bases for this lawsuit. Relevant allegations concerning the underlying cases follow.

### a. The Stillwell Case

On June 27, 2012, Plaintiff was working in an unmarked police cruiser, parked along Route 837 and monitoring traffic for suspected vehicles transporting illegal drugs through the area. Id. ¶¶ 19-21. At approximately 9:08 p.m., Plaintiff observed a white BMW sedan like one that he was expecting. Id. ¶ 22. The vehicle had dark tinted windows and its driver failed to signal before making a turn onto Route 837. Id. Having observed the driver commit multiple violations of the Pennsylvania Vehicle Code, Plaintiff initiated a stop of the vehicle using of police lights and sirens. Id. ¶¶ 25-27. The vehicle stopped along the side of Route 837. Id. ¶ 28. After requesting assistance from a marked police vehicle, Plaintiff approached the vehicle with his police badge displayed on a chain around his neck. Id. ¶¶ 29-30. The vehicle pulled away and "sped away down Route 837." Id. ¶¶ 31, 33. Plaintiff pursued the vehicle using lights and sirens; during the pursuit both Plaintiff and the suspected vehicle traveled at speeds exceeding the posted limit. Id. ¶¶ 34-35. Due to traffic at Kennywood Park, the suspected vehicle was forced to stop there. Id. ¶¶ 36-37. After reporting his position via radio, Plaintiff approached the suspected vehicle with his firearm drawn and instructed the driver to roll down the window. Id. ¶¶ 38, 40. When the driver did not immediately comply with this directive, Plaintiff instructed the driver to unlock the door and exit the vehicle. Id. ¶¶ 41-42. The driver did not immediately comply with Plaintiff's directive. Id. ¶ 43. Instead, Plaintiff observed the driver lean towards the center of the vehicle. Id. Plaintiff then used the handle of his firearm to break the driver's side window of the vehicle. Id. ¶ 44. Plaintiff ordered the driver, later identified as Danielle Stillwell, out of the vehicle. Id. ¶¶ 45-46. Ms. Stillwell complied and she was placed in

handcuffs. Id. ¶ 47. Three marked police units soon arrived on the scene. Id. ¶¶ 48-49. Plaintiff subsequently learned that Ms. Stillwell had called 911 after fleeing the original stop, expressing concern that Plaintiff was not a real police officer due to his plain clothes and unmarked vehicle. Id. ¶ 50.

At the Whitaker Borough Police Station, Ms. Stillwell asked Plaintiff if there was a way to resolve the matter without criminal charges being filed against her. Id. ¶ 63. Plaintiff contacted his supervisor, Chief Vargo of the Whitaker Borough Police Department, and requested permission from him to give Ms. Stillwell the option of accepting responsibility for the incident and paying restitution for the damage to Plaintiff's firearm in lieu of criminal charges being filed against her. Id. ¶¶ 65-66. After obtaining approval from Chief Vargo for his proposal, Plaintiff made the offer to Ms. Stillwell. Id. ¶¶ 67-68. Plaintiff indicated to Ms. Stillwell that if she did not accept the offer, he would charge her for Vehicle Code violations, including fleeing and eluding a police officer. Id. ¶¶ 56, 59, 69. Ms. Stillwell accepted the offer and inquired about a nearby ATM machine so she could obtain funds to make the restitution payment. Id. ¶¶ 72, 74. Plaintiff informed her that he would get an estimate on the necessary repair to his firearm and would contact her once he had the information. Id. ¶ 75. Ms. Stillwell was then released from custody. Id. ¶ 76.

Plaintiff subsequently attempted to contact Ms. Stillwell about the restitution. Id. ¶ 77-78. On July 2, 2012, Ms. Stillwell sent a text message to Plaintiff informing him, "I have spoken with the district attorney's office and they instructed me not to communicate with you. Please do not contact me regarding this matter." Id. ¶ 80. Plaintiff responded, "No problem. I'll file the charges." Id. ¶ 81. The following day, Plaintiff filed a criminal complaint against Ms. Stillwell for multiple Vehicle Code violations. Id. ¶ 82.

On October 19, 2012, Defendant Lyle Graber ("Graber"), a police detective for the Investigations Unit of the Allegheny County District Attorney, filed a Criminal Complaint and Affidavit of Probable Cause against Plaintiff for charges arising from the events described above relative to Plaintiff's conduct as to Ms. Stillwell. Id. ¶¶ 1, 87. Plaintiff was later acquitted of those charges following a jury trial. Id. ¶ 152.

### b. The Lang Case

In the spring of 2012, Plaintiff began conducting an investigation into suspected illegal drug activity at 122 and 244 Frank Street in Whitaker Borough. Id. ¶¶ 94, 96. Plaintiff conducted this investigation, in part, through his participation in the Allegheny County District Attorney's Narcotics Enforcement Team ("DANET"). Id. ¶¶ 16, 95. On April 30, 2012, Plaintiff conducted surveillance of 122 Frank Street, where he observed "substantial foot traffic entering and leaving the residence, with many of the individuals entering the residence staying for a short period of time, some less than five (5) minutes." Id. ¶¶ 98-99.

On May 7, 2012, Plaintiff performed a "trash pull" at 122 Frank Street, searching the contents of abandoned trash from the residence. Id. ¶ 100. In the trash, Plaintiff observed evidence of suspected illegal drug activity, *i.e.*, "owe sheets," cigarillo wrappers, marijuana seeds and stems, straws cut in half and knotted balloons. Id. ¶ 101. Due to concerns about the legality of the trash pull, Plaintiff's DANET supervisor directed that the report of the trash pull indicate negative results. Id. ¶ 102.

On May 22, 2012, Plaintiff received an anonymous letter from a "Concerned Citizen" requesting action about the possible drug activity at 122 Frank Street. Id. ¶ 103. The letter reported that a relative of the woman residing at 122 Frank Street had been shot at the other end

4

of Frank Street. Id. The letter further provided a list of ten license plate numbers for vehicles observed to be daily visitors to 122 Frank Street. Id.

On May 24, 2012, Plaintiff conducted surveillance of 122 Frank Street, observing a high volume of foot traffic as well as hand-to-hand transactions between John Michael Scott, Jr. and unknown individuals. Id. ¶ 104. Mr. Scott was known to Plaintiff to be a drug dealer. Id.

Also on May 24, 2012, several occupants of 122 Frank Street were observed leaving the residence in a vehicle that was later stopped by police and found to have marijuana therein. Id. ¶ 105. The vehicle's occupants admitted to smoking marijuana at 122 Frank Street. Id.

On June 15, 2012, Plaintiff conducted surveillance at 122 Frank Street and observed "a relatively high volume of foot traffic to and from the residence and several hand-to-hand transactions on the front porch." Id. ¶ 106.

On July 4, 2012, Plaintiff observed a man exit 122 Frank Street on foot. Id. ¶ 107. Plaintiff further observed a bulge in the waistband of the man's shorts, which he suspected was a firearm. Id. Plaintiff observed the man enter a vehicle, the license plate of which was one of those listed on the letter from the "Concerned Citizen." Id. ¶ 108. Plaintiff followed this vehicle and, after observing several Vehicle Code violations, he initiated a traffic stop. Id. ¶ 109. In the course of the stop, a search of the vehicle was conducted, which revealed that the operator, Travon Fuller, was in possession of a stolen hand gun. Id. ¶ 110.

On July 5, 2012, Plaintiff used a confidential informant ("CI") to conduct a controlled buy of drugs at 122 Frank Street. Id. ¶¶ 111-114. The CI purchased marijuana during the buy and observed inside the residence "marijuana packaged for sale, heroin stamp bags, various pills and multiple firearms." Id. ¶¶ 114-115.

On July 6, 2012, Plaintiff applied for a search warrant for 122 Frank Street. Id. ¶ 115. The supporting Affidavit for Probable Cause indicated that the leaseholder for 122 Frank Street was Michele Lang, who had a criminal history that included drug charges. Id. ¶ 116. The Affidavit also identified Ms. Lang's son as John Michael Scott, Jr., another resident of 122 Frank Street, who also had a "significant criminal history" that included drug charges. Id. ¶ 118. Plaintiff also indicated in the Affidavit that Mr. Scott had been involved in a March 8, 2012, shooting on Frank Street. Id. ¶ 119.

Also on July 6, 2012, Plaintiff applied for a search warrant for 19 Midway Drive, Apartment H, West Mifflin, Pennsylvania, indicating that Ms. Lang also resided at this address Id. ¶¶ 123-124. Ms. Lang had been frequently observed commuting between the Frank Street and Midway Drive residences. Id. ¶ 125.

Search warrants for both locations were issued on July 6, 2012. Id. ¶ 126.

The July 6, 2012, search of 122 Frank Street, at which Plaintiff was present, resulted in the seizure of, *inter alia*, "approximately one pound of marijuana, live ammunition, a large amount of cash, a scale with green leaf-like residue on it, heroin[] stamp bags and several cellular telephones." Id. ¶ 127. Part of the cash seized was a $20 bill which had been used in the controlled buy of July 5, 2012. Id. ¶ 129. At this time, Ms. Lang and Mr. Scott were detained and Ms. Lang's minor son was removed from the premises and released to the custody of his aunt. Id. ¶¶ 130-131.

On August 7, 2012, a dependency hearing concerning Ms. Lang's minor son was held in the Court of Common Pleas of Allegheny County before the Honorable Kim Berkeley Clark. Id. ¶ 133. Plaintiff testified at that hearing by telephone. Id. ¶ 134.

Ms. Lang and Mr. Scott were charged with endangering the welfare of a child, corruption of minors, reckless endangerment and numerous drug-related charges; these charges were ultimately withdrawn or nolle prossed. Id. ¶ 135.

On April 10, 2013, Defendant Graber filed a Criminal Complaint and Affidavit of Probable Cause against Plaintiff for charges arising from the search warrant applications and Plaintiff's testimony at the dependency hearing. Id. ¶ 137. Defendant Stephen A. Zappala, Jr. subsequently held a press conference where he emphasized police integrity and announced that the Whitaker Borough Police Department would be required to get approval from his office prior to obtaining search warrants. Id. ¶¶ 143-144. Subsequently, Plaintiff was acquitted of the criminal charges following a jury trial. Id. ¶ 153.

### 2. Procedural History

Plaintiff filed an Amended Complaint on April 8, 2015, bringing eight counts against Defendant Graber, individually and in his capacity as a Police Detective for the Allegheny County District Attorney; Defendant Allegheny County, Pennsylvania; Defendant Allegheny County Office of the District Attorney ("the ACDA"); and Defendant Stephen A. Zappala, Jr., individually and in his capacity as the District Attorney of Allegheny County, Pennsylvania. ECF No. 13.

On June 30, 2015, Defendants filed a Motion to Dismiss the Amended Complaint. ECF Nos. 18. Following issuance of a Report and Recommendation, ECF No. 25, United States District Judge Mark R. Hornak issued an Order on March 31, 2016, adopting the Report in Recommendation except as stated in the Order, granting the Motion to Dismiss in part and denying it in part. ECF No. 32. The Order dismissed multiple counts and claims with prejudice

but granted Plaintiff leave to file a Second Amended Complaint as to certain claims of two counts which the Order dismissed without prejudice. Id.

A Second Amended Complaint was filed on April 21, 2016. ECF No. 33. That Complaint was revised by Stipulation on July 14, 2016. ECF No. 43. The revised Complaint is the subject of the instant Motion to Dismiss.

Defendants filed the instant Motion to Dismiss and a supporting Brief on July 28, 2016. ECF Nos. 45-46. Plaintiff filed his Response in Opposition on August 18, 2016. ECF No. 48. Defendants filed a Reply Brief on September 14, 2016. ECF No. 53. Plaintiff filed a Sur-Reply Brief on October 3, 2016. ECF No. 56. The Motion to Dismiss is now ripe for consideration.

**B.   STANDARD OF REVIEW**

As the United States Supreme Court explained in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570. In assessing the merits of a claim subject to a motion to dismiss, a court must accept all alleged facts as true and draw all inferences gleaned therefrom in the light most favorable to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (citing Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003)). A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (quoting Graff v. Subbiah Cardiology Associates, Ltd., 2008 WL 2312671 (W.D. Pa. June 4, 2008)). The scope of review may extend to "matters of public record, orders, exhibits attached to the

8

complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

### C. DISCUSSION

In the operative Complaint, Plaintiff alleges that Defendants Graber, Zappala and the ACDA[2] initiated, pursued, extended and participated in the unlawful criminal proceedings against Plaintiff related to both the Stillwell and the Lang cases, acting with malice, bad faith and for a purpose other than justice, in violation of his rights under the Fourth Amendment to the United States Constitution. ECF No. 43 at 32-34; 35-37. These claims are brought pursuant to 42 U.S.C. § 1983. Id.

At the outset, the Court recognizes that the United States Court of Appeals for the Third Circuit has held:

> To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

McKenna v. City of Phila., 582 F.3d 447, 461 (3d Cir. 2009) (citation omitted).

Defendants assert multiple bases upon which these claims should be dismissed; however, one is dispositive. Defendants first assert that Zappala and Graber and qualifiedly immune from claims of malicious prosecution. ECF No. 46 at 8.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

---

[2] Plaintiff concedes that the ACDA should be dismissed as a party. ECF No. 48 at 23. Accordingly, the Complaint concerns only Defendants Zappala and Graber.

In the context of malicious prosecution, this Court has held that "especially where the doctrine of qualified immunity applies, the prevailing rule in this Circuit is that 'if probable cause is present as to any one count, a [criminal] defendant charged on multiple counts cannot state a § 1983 claim for malicious prosecution ….'" McGriff v. Marks, Civ. A. No. 12-63, 2013 U.S. Dist. LEXIS 61068 at * 13 (W.D. Pa. April 30, 2013) (quoting Posey v. Swissvale Borough, Civ. A. No. 12-955, at * 10, 2013 U.S. Dist. LEXIS 34415 (W.D. Pa. March 13, 2013) and citing Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005)).[3]

Thus, the applicability of qualified immunity turns on whether there was probable cause to support one of the counts in each case. The Court notes:

> Probable cause requires more than mere suspicion. However, it does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction
>
> Probable cause exists if there is a fair probability that the person committed the crime at issue. Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.
>
> Therefore, the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction
>
> Although, generally, the question of probable cause in a section 1983 damage suit is one for the jury, a district court may conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly
>
> In other words, the Court's task is to determine whether a reasonable jury could conclude that at the time the arrest was made, the facts and circumstances within [the officer's] knowledge were . . . sufficient for a

---

[3] The Court acknowledges that, in analyzing the prior Motion to Dismiss, we held that a finding of probable cause on one criminal charge does not foreclose a claim for malicious prosecution for other charges involving different elements, ECF No. 24 at 12 (adopted by ECF No. 32), citing Johnson v. Knorr, 477 F.3d 75, 84-85 (3d Cir. 2007). However, this Court made clear in McGriff that the relied-upon holding in Johnson has not always been applied in this Circuit and should not be applied in the context of qualified immunity, which is the issue before us in this Motion to Dismiss.

> prudent police officer to believe that Plaintiff committed the offenses charged.

McGriff, 2013 U.S. Dist. LEXIS 61068 at * 13-15 (citations and quotation marks omitted).

### 1. Count I: Malicious Prosecution (Stillwell)

Plaintiff was charged with four criminal charges in connection with the Stillwell case: (1) criminal mischief; (2) false swearing; (3) official oppression; and (4) criminal attempt (theft by extortion). This Court has determined that there was undisputed evidence of probable cause for, *inter alia*, the criminal mischief charge against Plaintiff. ECF No. 25 at 9-11 (adopted by ECF No. 32). Because there was probable cause for one of the four counts brought against Plaintiff in the Stillwell case, Plaintiff cannot state a § 1983 claim for malicious prosecution in relation thereto. Accordingly, it is recommended that the Motion to Dismiss be granted as to Count I.

### 2. Count II: Malicious Prosecution (Lang)

In connection with the Lang case, Plaintiff was charged with: (1) perjury; (2) false swearing (2 counts); (3) unsworn falsification to authorities (2 counts) and (4) official oppression (2 counts). This Court has determined that there was undisputed evidence of probable cause for, *inter alia*, the perjury charge against Plaintiff. ECF No. 25 at 24-27 (adopted by ECF No. 32). Because there was probable cause for one of the counts brought against Plaintiff in the Stillwell case, Plaintiff cannot state a § 1983 claim for malicious prosecution in relation thereto. Accordingly, it is recommended that the Motion to Dismiss be granted as to Count II.

### D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss, ECF No. 45, be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

        Respectfully submitted,

        <u>/s/ Maureen P. Kelly</u>
        MAUREEN P. KELLY
        CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: December 14, 2016

cc: The Honorable Mark R. Hornak
     United States District Judge

    All Counsel of Record via CM-ECF